THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* VICENTE PÉREZ DÍAZ, Defendant and Appellant.

No. 8562. Argued March 7, 1941.—Decided April 23, 1941.

Rafael and *Guillermo Atiles Moréu,* for appellant; *George A. Malcolm, Attorney General, R. A. Gómez, Prosecuting Attorney,* and *Luis Negrón Fernández, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

On February 16, 1938, the District Attorney of Arecibo filed an information against Vicente Pérez Díaz charging him with the crime of involuntary manslaughter.

The defendant pleaded not guilty and tried before a jury, he was found guilty. He moved for a new trial. The court denied his motion and rendered judgment on March 11, 1940, sentencing him to five months in jail.

Pérez Díaz appealed and in his brief he assigns five errors committed as follows: 1, The facts stated in the information do not constitute involuntary manslaughter; 2, under an information filed in accordance with Section 328 of the Penal Code, a verdict of involuntary manslaughter cannot be returned and judgment thereon cannot be rendered; 3, the court erred in denying the motion for a new trial and in

544.

rendering judgment immediately; 4, the court also erred in giving instructions to the jury based on an involuntary manslaughter and in invading the province of the jury as to the appraisal of the evidence; and 5, the verdict is contrary to the evidence.

The appellant, arguing his first assigned error, maintains that the facts alleged in the information constitute the offense defined and punished in Section 328 of the Penal Code and not the one defined in Section 203 of the same Code, and that therefore said information is not sufficient basis for a prosecution for involuntary manslaughter.

Section 328, above cited, provides:

"Every conductor, engineer, brakeman, switchman, or other person having charge wholly or in part of any railroad car, locomotive, automobile, train or steamboat, and any train dispatcher, telegraph operator, station agent, or other person wholly or in part charged with the duty of dispatching or directing the movements of any such car, locomotive, automobile, train or steamboat, who, through gross negligence or carelessness, suffers or causes the same to collide with another car, locomotive, automobile, train or steamboat or with any other object or thing whereby the death of a human being is produced, is punishable by imprisonment in the penitentiary for a maximum term of five years.

"If as a consequence of the collision, injury is suffered by any person, such conductor, engineer, brakeman, switchman or other person shall be punishable by imprisonment in jail for a maximum term of two years, or by maximum fine of one thousand dollars, or by both penalties in the discretion of the court."

And Section 203, states:

"Manslaughter Defined.—Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

"1. Voluntary. Voluntary—upon a sudden quarrel or heat of passion.

"2. Involuntary. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection."

The information filed reads as follows:

"The District Attorney files an information against Vicente Pérez Díaz, for the crime of an involuntary manslaughter (misdemeanor) committed as follows:

"The said defendant, Vicente Pérez Díaz, before the date of the presentment of this information, that is, on December 14, 1937, in Manatí, P. R., which is a part of the Judicial District of Arecibo, P. R., unlawful, wilfully, maliciously, and criminally, while driving the Pontiac car No. 11,124, without observing due diligence, care and circumspection, and while driving at an excessive speed through a public road, without blowing his horn, claxon or other warning device, while trying to overtake a horse mounted by Pascual Bruno Meléndez, collided with the aforesaid horse causing Pascual Bruno Meléndez to fall off, the latter receiving bruises and wounds, among them an intercraneal hemorrhage, all this being the unlawful cause of the death of said Pascual Bruno Meléndez, which took place some hours later at the Municipal Hospital of Manatí."

We have examined this information in the light of the last of the above-copied Sections, and in our opinion it contains all the allegations necessary to charge the defendant with the offense of involuntary manslaughter.

To drive an automobile in the manner expressed in the information is an illegal act which is not a felony but a misdemeanor, and as the death occurred when the act was committed, it is evident that we have to do with a case of involuntary manslaughter.

In the case of *People* v. *Benjamín,* 44 P.R.R. 431, Benjamín was charged with involuntary manslaughter. The case was tried before a jury, and the latter brought a verdict of guilt. The court rendered judgment of conviction. The case was appealed, defendant alleging that the evidence was insufficient and this Court decided:

"If from the evidence as a whole the conclusion can be reached that the chauffeur that caused with his automobile the death imputed to him was running at great speed, to the left, over a straight road, and that he could have perfectly seen the person struck by him, who was already in the center of the road, there is no basis for a reversal

of the judgment rendered in accordance with the verdict of the jury who convicted the chauffeur of involuntary manslaughter.''

And in *People* v. *Menéndez,* 43 P.R.R. 418, it was decided:

''In the instant case, a prosecution for involuntary manslaughter, the evidence tended to show that defendant was driving his car with dim lights, almost entirely out; that an automobile was coming up behind defendant's car and another one in opposite direction; and that defendant turned his car to the right without giving notice or warning and caused the death of a human being. *Held,* that the evidence was sufficient to submit the case, with proper instructions, to the jury.''

In 5 Am. Jur. 925, in summing up the decisions on this matter, it is stated:

''. . . . Under statutes providing that the killing of another in the doing of an unlawful act not amounting to a felony is manslaughter, a person who, while driving an automobile in violation of a statute or ordinance regulating speed or prescribing precautions to be observed by automobile drivers, and as a result of such violation kills another, is guilty of manslaughter.''

There is no doubt that if the information is examined in the light of the provisions of Section 328 of the Penal Code, it will be found that it alleges facts sufficient to charge the defendant with the offense to which said Section refers, but we do not agree with the appellant that, because of this, the district attorney cannot select the proceeding which he is going to institute and that he is bound to prosecute the defendant only in accordance with the said Section.

In support of his viewpoint, the appellant cites some excerpts from the opinion rendered by this Court in *People* v. *Padilla,* 56 P.R.R. 138. These excerpts do not uphold his contention, since no definite conclusion is reached in them. The decision as a whole is adverse to the appellant. It is summarized as follows:

''A single act may constitute an infringement of several statutes. In such case it is discretionary with The People to prosecute under either of said statutes.

"Subsequent provisions of a penal statute repeal former ones where they are clearly in conflict with the later. In the case at bar sections 328 and 204 of the Penal Code, as amended in 1916 and 1933, respectively, are found, on examination, not to conflict with each other and, therefore, there was no implicit repeal of the former by the latter."

Nor is our holding contradicted by the other decisions of this Court cited by appellant, to wit: *People* v. *González*, 24 P.R.R. 573, *People* v. *Limardo*, 29 P.R.R. 42, *People* v. *Jorge*, 37 P.R.R. 982 and *People* v. *Quevedo*, 15 P.R.R. 72.

What has been decided is based on the following decisions of this Court, to wit: *People* v. *Lebrón*, 23 P.R.R. 611, *People* v. *Irizarry*, 57 P.R.R. ___, *People* v. *Alvarez*, 56 P.R.R. 18 and *People* v. *Jiménez*, 31 P.R.R. 334.

■ The second assignment of error is based on the first. Consequently, it was not committed. If the information charges the commission of an involuntary manslaughter and the district attorney charged the defendant with the commission of this crime, it is clear that the jury did not err in rendering its verdict in the manner in which it did and neither did the court err in rendering judgment based on the verdict and the law.

■ Arguing the third assigned error the appellant maintains that the district court violated the provisions of Section 309 of the Code of Criminal Procedure, in rendering judgment before the two days established by the statute had elapsed.

The statute invoked provides:

"After a plea or verdict of guilty, or after a verdict against the defendant on the plea of a former conviction or acquittal, if the judgment be not arrested or a new trial granted, the court must appoint a time for pronouncing judgment, which, in cases of felony, must be at least two days after the verdict, if the court intend to remain in session so long; but if not, then at as remote a time as can reasonably be allowed."

And all that appears from the record on this point is stated in the judgment rendered by the court in this manner:

"On this day and in open court, there appeared the defendant, Vicente Pérez Díaz, represented by his lawyer Pedro Santos, to hear the judgment in the trial held against him for involuntary manslaughter, and in which the jury rendered verdict finding him guilty of the said crime, after denying a motion for new trial this same day. The court informed him as to the nature of the charge against him, of the plea entered by this counsel, the verdict rendered, as well as of the judgment rendered by this Court on December 18, 1939. The defendant was asked if he had any legal reason which would prevent the court from rendering judgment at this moment, and having answered in the negative, the Court entered judgment sentencing the defendant to five months in jail, with costs."

As it may be seen, the statute refers to felony cases, and involuntary manslaughter is not a felony by virtue of the amendment of May 4, 1933 (Laws of 1932–33, page 264) to Section 204 of the Penal Code which punishes it. The said Section as amended, reads:

"Voluntary manslaughter shall be punished by penitentiary imprisonment for a maximum term of ten (10) years. Involuntary homicide shall be punished by confinement in jail for a maximum term of three (3) years, or by a maximum fine of three thousand (3,000) dollars, or by both penalties at the same time, in the discretion of the court. It shall be considered as a misdemeanor for all legal purposes, and the district courts of Puerto Rico shall have exclusive original jurisdiction in cases of involuntary homicide. The accused shall have the right to request that he be tried either with or without a jury."

This beside the fact that, what took place, according to the record, shows an implicit waiver on the part of the defendant represented by his attorney, of his right, in case he should have any. The decision rendered by this Court in *People* v. *Aquino*, 50 P.R.R. 39, cited by the appellant, is consequently not applicable.

The reasons entertained by the lower court to deny the new trial, a matter which is included in the third assign-

ment of error and which should have been the object of a separate assignment, are stated in its order as follows:

"(1) A great part of the evidence offered for the new trial would have been cumulative evidence.

"(2) The evidence offered with respect to the fact that the deceased was deaf is not essential to the case, as the theory of the People which the jury believed, was to the effect that the defendant passed improperly between the horse on which the deceased was mounted and a bus, and furthermore even accepting that it had some bearing on the evidence of the case, there was some negative evidence in regard to the physical defect of the deceased.

"(3) Neither could we base the concession of a new trial, on the fact that part of the witnesses were working for relatives of the deceased, unless other facts were alleged to connect them with some purpose of partiality or prejudice."

We have read the extensive arguments adduced by the appellant in his brief and in our opinion they do not destroy the conclusions arrived at by the Court, which are in consequence upheld.

The fourth assignment of error reads as follows:

"The court committed serious error in giving the instructions to the jury, based on an involuntary manslaughter, when the facts alleged constitute violation of Section 328 of the Penal Code, on which the jury was not instructed; and it committed manifest error in that part wherein it instructed the jury to the effect that the defendant could have avoided the accident, by driving at a moderate speed, considering that further on there was a road junction, and at the other side a person on horseback, when these were facts to be weighed by the jury and not by the judge who admits them as proved."

In regard to the first part of the assignment it will suffice to say that in accordance with what has been already decided it must be concluded that the instructions of the court on involuntary manslaughter were given in harmony with the facts and the law. And as to the second, as both the evidence of the district attorney and that of the defendant agree as to the description of the place where the accident occurred, we do not see that the court erred in mentioning it in the way it did.

■ In the fifth and last assignment of error, it is alleged, as we know, that the verdict is contrary to the evidence.

According to the prosecuting attorney, the evidence for the People tended to show: ''that the day of the accident the defendant was driving the 'Pontiac' car on the road leading from Manatí to Arecibo; that in that same direction Pascual Bruno was riding on horseback on the right side of the road, going slowly (riding along the edge of the road); that the defendant was driving at some speed, at full speed, and that he did not blow the klaxon; that in the junction of the road from Ciales to Manatí, with the road which leads from Manatí to Arecibo, there was a bus which came from Ciales and which came to a stop upon reaching said place; that there was a truck coming which had been parked at the right side of the road, before arriving at said junction, waiting for the bus to start, to turn toward the road to Ciales; that while both the truck and the bus were parked and part of the latter's hood was on the road which leads from Manatí to Arecibo, the defendant drove through the part of road between the bus and the horse, which at the time was going in the same direction as the bus, without blowing the klaxon or sounding any warning device, said space being too small for the car of the defendant to go through, and as a result he collided with the horse and overthrew the rider, who suffered the fracture of the skull which caused his death.''

And ''with his witnesses, the defendant tended to show that the accident happened when the horseback rider tried to cross the road; that both of them were travelling in the same direction; that the defendant blew his horn; that he was driving at a moderate speed, that the bus to which the witness of The People referred did not cover any part of the road from Manatí to Arecibo, and that consequently it did not obstruct the traffic along that road, and that the collision occurred when the rider tried to go across to the left side of the road. In all other details this theory substantially agrees with that of the People, not only as to

the manner in which the car hit the horse, but also as to the description of the crossroads where the accident took place.''

We have read the transcript of the evidence and we find that the summary of the prosecuting attorney and the theories of both parties—prosecution and defense—are in harmony with it.

The jury settled the conflict of the evidence in favor of the prosecution and it can not be sustained that the verdict is without a basis. The commission of the illegal act—the violation of the Motor Vehicle Act—charged to the defendant, was shown, and the death caused by the act was also shown and consequently the verdict is based on the information, on the evidence and on the law.

The judgment appealed from must be affirmed.